IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BLACKBOARD, INC. | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 1:08-cv-1309-CMH-TRJ |
| TECHRADIUM, INC., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT TECHRADIUM, INC. TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

Defendant TechRadium, Inc. ("TechRadium") has moved this Court (hereinafter the "Virginia Court") to transfer this action to the United States District Court for the Eastern District of Texas, Marshall Division (the "Texas Court"). As shown below: (1) the subject matter of this dispute is inextricably linked to and is already the subject matter of a pending patent infringement action in the Texas Court involving U.S. Patent Nos. 7,130,389; 7,174,005; 7,362,852 and 7,418,085 (the "TechRadium Patents"); (2) the interest of the parties and the witnesses do not favor trial before this Court; (3) the interests of justice would be served by transferring this matter to the Texas Court. In support of this motion, TechRadium incorporates the accompanying Declaration of Ryan Rodkey and its Motion and Memorandum in Support of Defendant TechRadium, Inc. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3). This action before the Virginia Court is hereafter referred to as the "Virginia Litigation."

# INTRODUCTION

Both Blackboard, Inc. ("Blackboard"), through its subsidiary Blackboard Connect, Inc., and TechRadium offer mass alert notification products throughout the United States. These products permit mass alert notifications to be quickly and reliably sent to members of a predefined community. TechRadium's mass alert notification product is known as "IRIS", the Immediate Response Information System. The technology of IRIS is protected by the TechRadium Patents, which are owned by TechRadium. U.S. Patents Nos. 7,130,389, 7,174,005 and 7,362,852 are the basis for the pending litigation in the United States District Court, Eastern District of Texas, Marshall Division, Case No.: 2-08CV-214, filed on May 19, 2008 by TechRadium against Blackboard (the "Texas Litigation"). *See* Declaration of Ryan Rodkey, ¶ 3, attached hereto as Exhibit A (hereinafter referred to as Ex. A.)

One of the primary markets for these various mass alert notification products are school systems. The mass alert notification products in the school systems are used to alert school officials, parents, and government response teams as to conditions involving the safety and welfare of students. The mass alert notification products may be used for such critical issues as school lockdowns, as well as more routine issues such as weather school closings or date changes in events. Another significant market for these mass alert notification products is the United States military. The United States Army has contracted to use TechRadium's mass alert notification product to keep family members notified as to various conditions or events involving members of the military. Private and public corporations, municipalities and various government agencies and departments also use TechRadium's mass alert notification products for emergency and non-emergency issues. Ex. A, ¶ 4.

TechRadium has been offering mass alert notification products since 2001. Blackboard was not in this business until the end of the first quarter 2008. Historically, TechRadium competed with Pace America, beginning in 2002. Pace America was later acquired by NTI Group, Inc. ("NTI"). NTI was then acquired by Blackboard and restructured as Blackboard Connect in early 2008. Blackboard, through its subsidiary Blackboard Connect, and TechRadium have been direct competitors only since this acquisition. Ex. A, ¶ 5.

TechRadium believes that it is helpful to set out the facts in the form of a timeline:

- United States Patent No. 6,816,878 (the "'878 Patent") was filed for by Mr. Steven Zimmers and Mr. Daniel Davis (the "Inventors") in 2000. The Inventors of the '878 Patent were not related to Pace America, NTI, Blackboard or TechRadium at this time.[1] The '878 Patent is the subject of the Virginia Litigation.

- In late 2001, TechRadium began marketing a product identified as IRAS, a predecessor to its IRIS product. In late 2004, TechRadium began to market its IRIS mass notification system, which is based on the TechRadium Patents. The first sale of the IRIS system was in mid-2005.[2]

- On April 28, 2005, TechRadium filed its first patent application related to a mass alert notification system and services. This application, and others, resulted in the issuance of the TechRadium Patents, some of which are the basis for the Texas Litigation.[3]

- In June 2006, NTI sued TechRadium in the United States District Court for the Central District of California for allegedly interfering with NTI's business opportunities and related issues in connection with the parties' respective mass notification systems, but did not involve a claim for patent infringement by TechRadium. That case was settled without admission of wrongdoing.[4]

---

[1] Ex. A, ¶ 13.
[2] Ex. A, ¶ 6.
[3] Ex. A, ¶ 7.
[4] Ex. A, ¶ 8.

- After settlement of the California litigation, NTI and TechRadium continued to compete with each other for several years without further complaint or litigation.[5]

- In 2006 the Florida Department of Education issued a Request for Proposal (the "RFP") to solicit public bids for acquiring mass alert notification services for school districts throughout the state. NTI submitted a response to the RFP which closely tracks the invention shown and described in a number of the TechRadium Patents. TechRadium was subsequently awarded the Florida bid. However, NTI protested the bid award in an attempt to have the award overturned.[6]

- The Inventors filed suit for patent infringement against NTI in early 2008. That case was settled before an answer was filed and NTI accepted a non-exclusive license under the '878 Patent. TechRadium believes that, at that time, the Inventors continued to own and control the Patent.[7]

- Blackboard acquired NTI in January 2008.[8]

- In May 2008, TechRadium filed the Texas Litigation. TechRadium sued Blackboard and Blackboard Connect in the Eastern District of Texas contending that Blackboard's mass alert notification product infringes TechRadium's Patent Nos. 7,130,389; 7,174,005 and 7,362,852.[9] TechRadium's contention is based in part on NTI's RFP response.

- The Inventors of the '878 Patent were well aware of TechRadium prior to the sale of the '878 Patent to Blackboard. In fact, prior to the sale of the '878 Patent to Blackboard, the Inventors initiated communication with TechRadium on September 30, 2008 by sending an email and placing a call to Ryan Rodkey. The Inventors initially met with TechRadium on October 10, 2008, at TechRadium's attorney's offices, to discuss TechRadium's interest in the '878 Patent and TechRadium's interest in adding the '878 Patent to the TechRadium patent estate. The Inventors continued discussions with TechRadium with the last communication between the parties being on December 8, 2008. At various times during these discussions, Zimmers also attempted to convince and persuade TechRadium to settle TechRadium's Texas Litigation with Blackboard Connect Inc, and Blackboard Inc. At no time did Zimmers indicate that TechRadium was harming the Inventors, nor

---

[5] Ex. A., ¶ 9.
[6] Ex. A, ¶ 10.
[7] Ex. A, ¶ 13.
[8] Blackboard's Memorandum In Support of its Motion for Preliminary Injunction (hereinafter "Blackboard's Injunction"), p. 3.
[9] Plaintiff's Original Complaint, Civil Action No. 2-08CV-214, *TechRadium, Inc. v. Blackboard Connect, Inc. and Blackboard, Inc.*, In the United States District Court for the Eastern District of Texas, Marshall Division, is attached as Exhibit B; Ex. A, ¶ 11.

4

did the Inventors take any action to enforce their patent rights against TechRadium, even though the Inventors had previously taken action to enforce their patent rights against others, including NTI (now Blackboard) and National Notification Network, LLC (another competitor in the mass alert notification market).[10]

- On October 17, 2008, TechRadium and Blackboard met in an effort to resolve the Texas Litigation. Ryan Rodkey was present at this meeting. When the parties were unable to reach a settlement, Blackboard's representative, Matthew Small, said to Rodkey "You've given me a reason to eliminate one of my competitors."[11]

- On December 12, 2008, Blackboard purchased the '878 patent.[12]

- On December 18, 2008, Blackboard filed the Virginia Litigation, claiming that TechRadium's mass notification system violates the '878 patent, and seeking a preliminary injunction to stop TechRadium from making, using or selling its mass alert notification product.

- The Texas litigation is currently pending.[13]

Based on this timeline, TechRadium believes that Blackboard intentionally acquired the '878 patent in order to file this separate litigation to retaliate against TechRadium for filing the Texas Litigation, to drive up fees and expenses for TechRadium and to further Blackboard's stated goal of "eliminating" TechRadium.

The Virginia Litigation should be transferred to the Texas Court because the Virginia Litigation is a compulsory counterclaim to the Texas Litigation or, alternatively, is substantially similar. In addition, both cases involve the same parties, the same evidentiary proof, will likely involve the same witnesses, and the same or similar legal and factual issues. For these reasons, TechRadium requests that this case be transferred to the Texas Court.

---

[10] Ex. A, ¶ 13.
[11] Ex. A, ¶ 10.
[12] Blackboard's Injunction, p. 3.
[13] Ex. A, ¶ 11.

# ARGUMENT

Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold matter to be decided is "whether [the] suit could have been brought by the Plaintiff in the proposed transferee forum." *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F.Supp.2d 705, 709 (E.D. Va. 2002); *also Corry v. CFM Majestic Inc.*, 16 F.Supp.2d 660, 663 (E.D. Va. 1998) (citing 28 U.S.C. §1404(a)) ("[a] motion to transfer will only be granted if the case 'might have been brought' in the transferee district").

Once that threshold question has been determined, the principal factors considered in determining the appropriateness of a transfer pursuant to §1404(a) are: (1) the ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law (not an issue here); and (7) the interest of justice. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 631 (E.D. Virginia 2006). This decision is committed to the sound discretion of the district court. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992).

### A. This case could have been filed in the Texas Court.

The threshold inquiry in determining jurisdiction is deciding whether this case could have been brought in the proposed transferee court. *See Brown Mfg. Corp.*, 219 F.Supp.2d at 709 (whether the action could be brought in the proposed transferee court is the threshold inquiry). A patent infringement action may be brought in any judicial district where a corporate defendant is

subject to personal jurisdiction. 28 U.S.C. §1400(b); 28 U.S.C. 1391(c). Because TechRadium is subject to personal jurisdiction in the Texas Court, and has already subjected itself to personal jurisdiction in that court, the Virginia Litigation could have been brought in the Texas Court.

B.     **The §1404(a) factors favor transfer to the Texas Court.**

    1.     **Transfer to the Texas Court is warranted in the interest of justice and under a compulsory counterclaim process.**

One of the most important factors under §1404(a) is the "interest of justice." The interest of justice is such a strong consideration that the court should transfer a case in some instances even when the other §1404(a) factors do not favor transfer. "In some cases, 'the interest of justice may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different directions.'" *Byerson*, 467 F. Supp. 2d at 637. In this case, however, substantially all factors weigh in favor of transfer to the Texas Court. Among the most prominent interests of justice are judicial economy and the avoidance of inconsistent judgments. *Id.* at 635.

In a recent patent infringement case pending before the Eastern District of Virginia, the court recognized the application of the first-to-file rule, and the benefits of applying it in patent cases to avoid "the uneconomical use of judicial resources and the risk of conflicting judicial determinations." *Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp.2d 690, 692 (E.D. Va. 2006).

Moreover, components of the interest of justice include the "existence of a related action in a different judicial District and the first-to-file rule." *Byerson*, 467 F. Supp. 2d at 635. The "first-to-file" rule states that:

> [I]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject **must** decide it. The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources. For purposes of the first-to-file rule, the actions being assessed need not be

> identical if there is substantial overlap with respect to the issues and parties.

*Id.* at 635-36 (internal citations omitted, emphasis added).

Numerous other cases have applied the first-to-file in a variety of contexts because of longstanding principles of comity and sound judicial administration, and because application of the rule maximizes judicial economy, minimizes embarrassing inconsistencies, avoids encroaching on the authority of another federal court, promotes uniformity of results, and avoids piecemeal litigation. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-20 (1976) (discussing the first to file rule in the context of concurrently pending state and federal litigation); *Save Power Limited v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Cisneros v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 862 F. Supp. 1531, 1533 (W.D. Va. 1994) (applying the first to file rule in the context of a stay in bankruptcy).

The Texas Litigation involving the mass alert technology of TechRadium and Blackboard was filed in May, 2008, while the Virginia Litigation involving the mass alert technology of TechRadium and Blackboard was filed in December, 2008. Thus, under the first-to-file rule, the Texas Court first had possession of the subject matter underlying both the dispute in the earlier filed Texas Litigation and the later filed Virginia Litigation.

With respect to the relatedness of the actions in different judicial districts, this Court has stated that:

> When related actions are pending in the transferee forum, the interest of justice is generally thought to "weigh heavily" in favor of transfer. In most cases, the "litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery," and prevents "duplicative litigation and inconsistent results." Transfer and consolidation will serve the interest of judicial economy in most cases where the related actions raise similar or identical issues of fact and law.

*Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (citations omitted); *see also Continental Grain Co. v. Barge*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.")

The Texas Litigation and the Virginia Litigation substantially overlap with respect to the technology at issue and the parties. More specifically, TechRadium has alleged in the Texas Litigation that the Blackboard mass alert notification products infringe the TechRadium Patents. In the Virginia Litigation, Blackboard has alleged that the TechRadium mass alert notification products infringe Blackboard's U.S. Patent No. 6,816,878 (the "'878 Patent"). Additionally, in the Virginia Litigation, Blackboard has requested a preliminary injunction on the grounds that the TechRadium mass alert notification products are resulting in irreparable harm to Blackboard under the '878 Patent. In Blackboard's Memorandum in Support of Its Motion for Preliminary Injunction, Blackboard acknowledged that Blackboard utilizes mass alert notification technology in "several alert notification products that are sold in Virginia and nationally to schools, government agencies and the military." Blackboard Injunction, at p.1. It is these *very same* Blackboard mass alert products that TechRadium has alleged in the Texas Litigation infringe the '005 Patent. Thus, very clearly there is substantial, and possibly exact, overlap between the technology and issues of the Texas Litigation and the Virginia Litigation.

Finally, Rule 13(a)(1)(A) defines as a compulsory counterclaim any claim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. The subject matter of the Texas Litigation is Blackboard's mass alert notification products. Blackboard has further alleged in its preliminary injunction Memorandum that Blackboard's

mass alert notification products embody the technology the '878 Patent, which '878 Patent forms the basis for Blackboard's compliant in the Virginia Litigation. Thus, very clearly, Blackboard's claims in the Virginia Litigation arise out of the same transactions or occurrences that is the subject matter of TechRadium's claim in the Texas Litigation. For this reason, Blackboard's claims in the Virginia Litigation should have asserted as counterclaims in the Texas Litigation.

In summary, the two cases, the evaluation of the patents and the technology disclosed therein, the evaluation of each party's allegedly infringing mass notification products, and the evaluation of damages arising from the use and sale of such mass notification products by the parties are intrinsically intertwined. As a result, the Virginia Litigation is either a compulsory counterclaim to the Texas Litigation or, at the very least, substantially similar. Therefore, based on the interest of justice including the first-to-file rule, this Court should transfer the Virginia Litigation to the Texas Court.

### 2. Sources of proof and ease of access thereto are more available in Texas.

The ease of access to sources of proof also weighs in favor of transfer, or are at least, of neutral application. The location of the witnesses and the ability to subpoena them is discussed, *infra,* in Sections 3, 4 and 5. TechRadium believes that all of its relevant documents will be located in Texas, where its business offices and personnel are located. Ex. A, ¶ 11. It is TechRadium's activities that give rise to Blackboard's asserted claims and thus, these sources of proof—located in Texas—are presumably the most significant evidence in the case from Blackboard's perspective.

Notwithstanding the foregoing, Blackboard is a national and international company, with three offices throughout the United States and several international offices with hundreds of

employees.[14] Although Blackboard states it has three offices in Virginia, those offices are merely "data centers." Blackboard's Injunction, at p. 2. In addition, although Blackboard claims that its headquarters is located only nine miles from the Alexandria courthouse, Blackboard ignores the fact that its headquarters is located in an entirely separate federal district court's venue – the District of Columbia. Presumably Blackboard's principle place of business—located in a different court venue—is the primary source of any relevant documents and personnel controlled by Blackboard. Thus, neither party has substantial sources of proof in the venue of the Virginia Court. Further, the ease of access to sources of proof by Blackboard is essentially the same since both forums are removed from Blackboard's principle place of business.

Moreover, it should be noted that Blackboard has previously filed suit for patent infringement in the Eastern District of Texas against a Canadian defendant. See Ex. D. Since Blackboard was free to select its forum in that case and chose the Eastern District of Texas, presumably the Eastern District of Texas is a convenient forum for Blackboard. Thus, it appears that this factor weighs in favor of a transfer or, in the very least, is a neutral factor for the parties.

---

[14] Blackboard's Injunction, at p. 2; *See also* Blackboard's website at www.blackboard.com.

### 3. Texas is more convenient overall for the parties and witnesses.

As stated above, Blackboard is a national and international company, with three offices through the United States and several international offices with hundreds of employees. Blackboard's revenues for the third quarter of 2008 were about $74 million. Exhibit C, Excerpts of Blackboard's 10-Q filed November 6, 2008. Although Blackboard states it has three offices in Virginia, those offices are merely "data centers," which would not appear to have any connection with this patent infringement case. Blackboard's Injunction, at p. 2.

By contrast, TechRadium has 17 employees, including all officers, working at its one facility located in Sugar Land, Texas, a suburb of Houston.15 All of TechRadium's internal fact witnesses reside in Texas. All of TechRadium's documents are located in Texas. Many of TechRadium's customers are located in Texas and along the Gulf Coast, including customers in the Eastern District of Texas. Some of TechRadium's customers in this area are Mount Pleasant Fire Department, various member churches of the North Texas District of the Assemblies of God, Saltillo Independent School District in Mount Vernon, and Ore City Independent School in Ore City. TechRadium is able to service its clients through web applications, and its employees do not typically travel to install software or perform training. Specifically, TechRadium generally trains, supports and services its customers from its Texas facility. TechRadium's total revenues are currently less than $10,000,000.00 annually.16

The weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action. *Board of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988).

---

15 Ex. A, ¶ 2.
16 Ex. A, ¶ 14.

Where a claim has little or no connection to the forum, a plaintiff's choice of that forum will not be entitled to substantial weight, and transfer to a venue with more substantial contacts is favored. *See Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003). In particular, the plaintiff's choice of venue is "of little moment [when] it is neither plaintiff's nor defendant's home forum." *Corry*, 16 F. Supp. 2d at 666. Although Blackboard has "data centers" in Virginia, it does not appear that those the employees in those data centers would be relevant witnesses or possess relevant documents. Blackboard has employees that allegedly reside in Virginia, but they work at Blackboard's headquarters in the District of Columbia, which is a separate federal district.

In addition, Blackboard has previously chosen to litigate a different patent infringement case in the Eastern District of Texas. On July 26, 2006, Blackboard filed a complaint against Desire2Learn, Inc., a Canadian company, contending merely that Desire2Learn had committed acts of patent infringement in the Eastern District of Texas. *See* Exhibit D, Excerpts of Complaint against Desire2Learn. Interestingly, Blackboard's venue allegations in the Desire2Learn case are virtually verbatim of its venue allegations in the Virginia Litigation. Ex. D, ¶ 4.

Notably, the fact that Blackboard's attorneys have an office that is convenient to the Virginia Court has no weight in this Court's consideration. *Koh v. Microtec Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003) (convenience to counsel is not an appropriate consideration in resolving a motion to transfer venue).

In the interests of full disclosure, one of TechRadium's primary customers is located in Virginia – the United States Army. However, TechRadium is unaware of any documents located at the United States Army's Virginia facilities that would be relevant to this litigation.

TechRadium has not traveled to Virginia to service any customer.[17] In addition, Blackboard states that it has 75 clients in Virginia. Blackboard's Injunction, at p. 2. However, Blackboard fails to state whether it intends to call any witnesses from these clients or whether these clients will have any documents that are relevant to this suit. Since Blackboard's claims in the Virginia Litigation are based on TechRadium's activities, it would appear that any of Blackboard clients in Virginia would be unlikely to be witnesses or possess documents relevant to Blackboard's claims based on TechRadium's activities. Thus, Texas would be more convenient overall for the parties and *relevant* witnesses.

### 4. Most fact witnesses in the case are more likely to be located in Texas.

The cost of obtaining the attendance of witnesses would be less in Texas. In this case, to the extent Blackboard utilizes any fact witnesses of Blackboard to establish its cases, such fact witnesses will likely reside in the D.C. area. More likely, the fact witnesses in this case will be fact witnesses located in Texas since Texas is the principle place of business of the alleged infringer. In this same vein, the vast majority of TechRadium's fact witnesses will likely reside in Texas. Thus, the Texas Court is likely to be more convenient for the majority of fact witnesses in this case than the Virginia Court. Thus, this §1404(a) factor weighs in favor of a transfer to the Texas Court.

---

[17] If the contract with the United States Army (which is held through a distributor – Qwest Communications Government Services Division) is relevant at all, it could be relevant for the purpose of showing damages. However, the amounts paid to TechRadium would be in the possession of TechRadium; any documents or witnesses of the United States Army on the issue of amounts paid would be cumulative of the information already in TechRadium's possession. In addition, most of the communications concerning this contract occurred between Qwest and TechRadium. Ex. A, ¶ 14.

### 5. The compulsory process would effect more witnesses in Texas than in Virginia.

As stated above, most of the witnesses are anticipated to be either experts or TechRadium employees located in Texas. Thus, there are probably few witnesses that would need to be compelled to testify through subpoena power. Further, Federal Rule 45(b)(2) allows service of subpoenas throughout the United States as long as deposition of the person to be deposed is taken within 100 miles of the place specified for the deposition, hearing, trial production or inspection. Based on this Rule, TechRadium does not anticipate any problems taking the depositions of all necessary witnesses.

### 6. The interest in having local controversies decided at home

The determination of a motion to transfer requires the court to weigh the convenience of the parties and witnesses. *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 570 (E.D. Va. 2005). "Because patent infringement actions typically involve the testimony of those associated with the development and production of the allegedly infringing product [or process], the preferred forum . . . is . . . the hub of activity centered around [the allegedly infringing product's] production." *Hunter Eng. Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 775 (E.D. Va. 2002) (internal citations omitted). This general rule recognizes that most discoverable evidence will be found around the production site. *Id.* at 775. In this case, the hub of the allegedly infringing product or process is Texas, as TechRadium is located only in Texas. Thus, this analysis favors a transfer to Texas.

### C. Blackboard is forum shopping

Blackboard could clearly have filed this action in the Texas Litigation since Blackboard has previously filed patent infringement litigation in the Texas Court. It appears that Blackboard's primary motivation for not doing so in this particular case is Blackboard's

expressed intent to drive TechRadium out of business and to obtain the benefit of the Virginia Court's "rocket docket." However, neither of these are helpful factors to Blackboard. First, the decision of Blackboard's to file a second substantially related case for the purpose of forum shopping is not something that is appreciated by the courts. *Torres v. Steamship Rosario*, 125 F. Supp. 296, 297 (S.D.N.Y. 1954) (Section 1404(a) was designed to remedy the evils of forum shopping). Second, courts in Virginia have routinely declined to give the "rocket docket" consideration weight, noting that where the "rocket docket" is the primary motivation for laying venue, the interests of justice are not served by such forum shopping. *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 744 (E. D. Va. 2003). Even if the "rocket docket" is a factor, it is one that bears little weight. *GTE Wireless, Inc. v. Qualcomm, Inc.* 71 F. Supp. 2d 517, 520 (E.D. Va. 1999) (docket conditions are a minor consideration when all other reasonable and logical factors would result in a transfer). Blackboard should not be allowed to forum shop in order to achieve its stated goal of driving TechRadium out of business.

## **CONCLUSION**

The Virginia Litigation has little or no direct connection with Virginia. It should have been filed as a compulsory counterclaim in the Texas Litigation that has been pending between the parties since May 2008. The fact that Blackboard chose not to file its claim in the Texas Litigation, and pursue the case in the Virginia Court, can only be attributed to forum shopping and the fact that Blackboard's goal is to drive TechRadium out of business. This Court should not condone such forum shopping. Moreover, all of the §1404(a) factors weigh heavily in favor of a transfer of this case to the Texas Court. In the interests of convenience and fairness, TechRadium requests transfer of the Virginia Litigation to the Texas Court. TechRadium also requests any other relief to which it may properly show itself to be entitled.

Respectfully submitted,

/s/Mary C. Zinsner
Mary C. Zinsner, VSB No. 31397
mary.zinsner@troutmansanders.com
S. Mohsin Reza, VSB No. 75347
mohsin.reza@troutmansanders.com
Attorneys for TechRadium, Inc.
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340

Richard E. Griffin, Esquire
rgriffin@jw.com
Mark Tidwell, Esquire
mtidwell@jw.com
Of Counsel
Jackson Walker, L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Blair Martin Jacobs, Esquire
>bjacobs@mwe.com
>Karla Lynn Palmer, Esquire
>kpalmer@mwe.com
>McDermott Will & Emery LLP
>600 13th Street, NW
>Washington, DC 20005
>Telephone: (202) 756-8000
>Facsimile: (202) 756-8199
>
>Fay E. Morriseau, Esquire
>fmorriseau@mwe.com
>McDermott Will & Emery LLP
>18191 Von Karman Avenue, Suite 500
>Irvine, CA 92612
>Telephone: (949) 757-7115
>Facsimile: (949) 851-9348

>/s/Mary C. Zinsner
>Mary C. Zinsner, VSB No. 31397
>mary.zinsner@troutmansanders.com
>S. Mohsin Reza, VSB No. 75347
>mohsin.reza@troutmansanders.com
>Attorneys for TechRadium, Inc.
>Troutman Sanders LLP
>1660 International Drive, Suite 600
>McLean, VA 22102
>Telephone: (703) 734-4334
>Facsimile: (703) 734-4340

Richard E. Griffin, Esquire
rgriffin@jw.com
Mark Tidwell, Esquire
mtidwell@jw.com
Of Counsel
Jackson Walker, L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

#384854v1