IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Blackboard Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:08-cv-1309 – CMA-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| TechRadium, Inc., | ) | |
| | ) | |
| Defendant | ) | |

# TECHRADIUM'S RESPONSE AND MEMORANDUM OF LAW
# IN OPPOSITION TO
# BLACKBOARD'S MOTION FOR PRELIMINARY INJUNCTION

OF COUNSEL:
Jackson Walker L.L.P.
Richard E. Griffin
Texas State Bar No. 08473520
Email: rgriffin@jw.com
Mark Tidwell
Texas State Bar No. 00788542
Email: mtidwell@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 (facsimile)

Mary C. Zinsner, VSB No. 31397
S. Mohsin Reza, VSB No.75347
Attorneys for TechRadium, Inc.
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com

## INTRODUCTION

Plaintiff Blackboard Inc. ("Blackboard") has requested preliminary injunctive relief concerning the allegedly infringing products offered by Defendant TechRadium, Inc. ("TechRadium"), as covered by claim 43 of U.S. Patent No. 6,816,878 ("the '878 Patent"). As shown below, the history of the parties and the actions by TechRadium do not begin to support the extraordinary relief of a preliminary injunction. At best, Blackboard has a legitimate right to pursue its infringement claim against TechRadium with respect to the '878 Patent, a claim it is likely to lose, and to attempt to recover damages in the ordinary course. Blackboard is not entitled to preliminary injunctive relief or to expedited discovery.

### I. Background of the Parties

Both Blackboard, through its subsidiary Blackboard Connect, Inc., and TechRadium offer mass alert notification products throughout the United States. These products permit mass alert notifications to be quickly and reliably sent to members of a predefined community. TechRadium's mass alert notification product is known as "IRIS", the Immediate Response Information System. The technology of IRIS is protected by the TechRadium Patents, which are owned by TechRadium. U.S. Patents Nos. 7,130,389, 7,174,005 and 7,362,852 are the basis for the pending litigation in the United States District Court, Eastern District of Texas, Marshall Division, Case No.: 2-08CV-214, filed on May 19, 2008 by TechRadium against Blackboard (the "Texas Litigation"). *See* Declaration of Ryan Rodkey, ¶ 3, attached hereto as Exhibit A (hereinafter referred to as Ex. A.)

One of the primary markets for these various mass alert notification products are school systems. The mass alert notification products in the school systems are used to

alert school officials, parents, and government response teams as to conditions involving the safety and welfare of students. The mass alert notification products may be used for such critical issues as school lockdowns, as well as more routine issues such as weather school closings or date changes in events. Another significant market for these mass alert notification products is the United States military. The United States Army has contracted to use TechRadium's mass alert notification product to keep family members notified as to various conditions or events involving members of the military. Private and public corporations, municipalities and various government agencies and departments also use TechRadium's mass alert notification products for emergency and non-emergency issues. Ex. A, ¶ 4.

TechRadium has been offering and selling mass alert notification products since 2001. Blackboard did not begin doing so until the end of the first quarter 2008. Historically, TechRadium competed with Pace America for this business, beginning in 2002. Pace America was later acquired by NTI Group, Inc. ("NTI"). NTI was then acquired by Blackboard and restructured as Blackboard Connect in early 2008. Blackboard, through its subsidiary Blackboard Connect, and TechRadium have therefore been direct competitors for less than one year.

TechRadium believes that it is helpful to set out the facts in the form of a timeline:

- United States Patent No. 6,816,878 (the "'878 patent") was filed for by Mr. Steven Zimmers and Mr. Daniel Davis (the "inventors") in 2000. The Inventors of the '878 Patent were not related to Pace America, NTI, Blackboard or TechRadium at this time.[1] The '878 Patent is the subject of this litigation.

---

[1] Ex. A, ¶ 13.

- In late 2001, TechRadium began marketing a product identified as IRAS, a predecessor to its IRIS product. In late 2004, TechRadium began to market its IRIS mass notification system, which is based on the TechRadium Patents. The first sale of the IRIS system was in mid-2005.[2]

- On April 28, 2005, TechRadium filed its first patent application related to a mass alert notification system and services. This application, and others, resulted in the issuance of the TechRadium Patents, some of which are the basis for the Texas litigation.[3]

- In June 2006, NTI sued TechRadium in the United States District Court for the Central District of California for allegedly interfering with NTI's business opportunities and related issues in connection with the parties' respective mass notification systems, but did not file a claim for patent infringement by TechRadium. That case was settled without admission of wrongdoing.[4]

- After settlement of the California litigation, NTI and TechRadium continued to compete with each other for several years without further complaint or litigation of any nature.[5]

- In 2006 the Florida Department of Education issued a Request for Proposal (the "RFP") to solicit public bids for acquiring mass alert notification services for school districts throughout the state. NTI submitted a response to the RFP which closely tracks the invention shown and described in a number of the TechRadium Patents. TechRadium was subsequently awarded the Florida bid. However, NTI protested the bid award in an attempt to have the award overturned.[6]

- The Inventors filed suit for patent infringement against NTI in early 2008. That case was settled before an answer was filed and NTI accepted a non-exclusive license under the '878 Patent. TechRadium believes that, at that time, the Inventors continued to own and control the Patent.[7]

- Blackboard acquired NTI in January 2008.[8]

- In May 2008, TechRadium filed the Texas Litigation. TechRadium sued Blackboard and Blackboard Connect in the Eastern District of Texas contending that Blackboard's mass alert notification product infringes

---

[2] Ex. A, ¶ 6.
[3] Ex. A, ¶ 7.
[4] Ex. A, ¶ 8.
[5] Ex. A., ¶ 9.
[6] Ex. A, ¶ 10.
[7] Ex. A, ¶ 13.
[8] Blackboard's Memorandum In Support of its Motion for Preliminary Injunction (hereinafter "Blackboard's Injunction"), p. 3.

TechRadium's Patent Nos. 7,130,389; 7,174,005 and 7,362,852.[9] TechRadium's contention is based in part on NTI's RFP response.

- The Inventors of the '878 Patent were well aware of TechRadium and its product prior to the sale of the '878 Patent to Blackboard. In fact, prior to the sale of the '878 Patent to Blackboard, the Inventors initiated communication with TechRadium on September 30, 2008 by sending an email and placing a call to Ryan Rodkey. The Inventors initially met with TechRadium on October 10, 2008, at TechRadium's attorney's offices, to discuss TechRadium's interest in the '878 Patent and TechRadium's interest in adding the '878 Patent to the TechRadium patent estate. The Inventors continued discussions with TechRadium with the last communication between the parties being on December 8, 2008. At various times during these discussions, Zimmers also attempted to convince and persuade TechRadium to settle TechRadium's Texas Litigation with Blackboard Connect Inc, and Blackboard Inc. At no time did Zimmers indicate that TechRadium was harming the Inventors, nor did the Inventors take any action to enforce their patent rights against TechRadium, even though the Inventors had previously taken action to enforce their patent rights against others, including NTI (now Blackboard) and National Notification Network, LLC (another competitor in the mass alert notification market).[10]

- On October 17, 2008, TechRadium and Blackboard met in an effort to resolve the Texas Litigation. Ryan Rodkey was present at this meeting. When the parties were unable to reach a settlement, Blackboard's representative, Matthew Small, said to Rodkey "You've given me a reason to eliminate one of my competitors."[11]

- On December 12, 2008, Blackboard purchased the '878 patent.[12]

- On December 18, 2008, Blackboard filed the Virginia Litigation, claiming that TechRadium's mass notification system violates the '878 patent, and seeking a preliminary injunction to stop TechRadium from making, using or selling its mass alert notification product.

- The Texas litigation is currently pending.[13]

---

[9] Plaintiff's Original Complaint, Civil Action No. 2-08CV-214, *TechRadium, Inc. v. Blackboard Connect, Inc. and Blackboard, Inc.*, In the United States District Court for the Eastern District of Texas, Marshall Division, is attached as Exhibit B; Ex. A, ¶ 11.
[10] Ex. A, ¶ 13.
[11] Ex. A, ¶ 10.
[12] Blackboard's Injunction, p. 3.
[13] Ex. A, ¶ 11.

Based on this timeline, TechRadium believes that Blackboard intentionally acquired the '878 patent in order to file this separate litigation to retaliate against TechRadium for filing the Texas Litigation, to drive up fees and expenses for TechRadium and to further Blackboard's stated goal of "eliminating" TechRadium as an operating company.

## II. The TechRadium Technology

The TechRadium mass alert notification product (the "TechRadium Product") permits an Administrator/employee of a TechRadium client to formulate messages and mass distribute the messages over multiple communication channels based on a client defined priority and hierarchy. Declaration of Darren Ross, attached hereto as Exhibit C, ¶ 3.

In the TechRadium Product, the Administrator initiates traffic to the IRIS website from the client base site, via the Internet by logging onto the IRIS website. Next, the traffic enters the IRIS system into a Server Load Balancer ("SLB"). The SLB sends the traffic to a single webserver based on load and availability.[14] The webserver displays the IRIS interface to the client and collects information from the client to send the alert. The collected information comprises:

    a.    the recipients,

    b.    the communication channels to be used,

    c.    the content of the message to be delivered,

    d.    the priority order or hierarchy to be used by the IRIS System.[15]

---

[14] Ex. C, ¶ 4-6.
[15] Ex. C, ¶ 7.

The collected information is sent to a processing server to perform the logic and massaging of the information collected by (i) sorting the data for priority order, (ii) sorting the data for duplicates to be removed and (iii) checking the data for validity.[16]

After "massaging", the collected information is sent to a Database for delivery to the recipient devices. (i.e., phone, email, sms) via the selected communication channels. The collected information is stored in the Database until the delivery gateways picks up the information for delivery. The delivery gateways are continually monitoring the database for new information that needs to be delivered. The gateway then delivers the message (i.e., phone call) and reports the results of the phone call to the database (i.e., Human, Machine, no answer).[17]

In addition to the Database, the system runs a mirror database using MSSQL2005 system in a 'High Availability Operating Mode' to create a redundant, highly available copy of the active database in event of failure of the primary Database. When running in 'mirror mode' only a single database is accessible at any one time. If a failure occurs the 'mirror' becomes the primary database.[18]

### III. Requirement for a Preliminary Injunction

In a patent infringement matter, a party seeking equitable preliminary injunctive relief must meet four elements: (1) substantial likelihood of success on the merits, (2) irreparable harm should the injunction not issue, (3) balance of hardships in movant's favor, and (4) effect on the public interest. *See eBay, Inc. v Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006). Even should a movant demonstrate a likelihood of success on the

---

[16] Ex. C, ¶ 8.
[17] Ex. C, ¶ 9-12.
[18] Ex. C, ¶ 13.

7

merits, the decision of whether or not to provide injunctive relief remains soundly within the court's equitable discretion. *Id.*

### (1) Blackboard has not demonstrated a Likelihood of Success on the Merits

Success on the merits in an infringement matter involves essentially two steps. *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 976 (Fed. Cir. 1995) *(en banc), aff'd.* 517 U.S. 370 (1996). First the court interprets the claim language as a matter of law. *Id.* at 977-79. The claims of the patent specifically define the subject matter that the inventor regards as his invention. *Id.* at 978. The claim sets the metes and bounds of the patent owner's exclusive rights. *Id.* at 997. The Federal Circuit has held that it is solely within the court's province to determine "the meanings to be attributed to all disputed terms used in the claims in suit."[19] In general, claim terms are to be interpreted in accordance with their "ordinary meaning,"[20] but this may be altered when the "ordinary meaning" is unclear or is modified or limited by the specification, the file history of the patent, the prior art or statute.

Moreover, the prosecution history has primary significance in understanding the claims. "'[A]ll express representations made by or on behalf of the applicant to the examiner to induce a patent grant' limit the interpretation of the claims 'so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.'"[21] A patentee disclaims or disavows subject matter by

---

[19] *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) *(emphasis added).*
[20] In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *See Brown v. 3M*, 265 F.3d 1349, 1352 [60 USPQ2d 1375] (Fed Cir. 2001) (holding that the claims did "not require elaborate interpretation").
[21] *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1368 (Fed. Cir. 2001) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)); *see also Cultor Corp. v. A.E. Staley Mfg. Co.*,

distinguishing the claimed invention from the prior art.[22] "Arguments made to overcome prior art can ... evidence an admission sufficient to give rise to a finding of surrender.... [T]his is true even when the arguments are made in the absence of any claim amendment."[23] Such arguments result in surrender of subject matter even if they are not necessary for allowance.[24] Prosecution history estoppel arises where amendments narrow claim scope to comply with the Patent Act, rejection of the original claim by the examiner indicates belief by the examiner that the claim as filed was unpatentable, and amendments that narrow claim scope create a rebuttable presumption of estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskki Co.* 535 U.S. 722, 735-38 (2002). In addition, in *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40-41 (1997), the Supreme Court held that prosecution history estoppel continues to be available as a defense to infringement and unless a patent holder can demonstrate that an amendment required was unrelated to patentability prosecution history estoppel would apply.

The second step in determining infringement requires the court to compare the alleged infringing product to each element of the claims. *Markman*, 52 F.3d at 976. Patent infringement requires that an accused device fall within the scope of at least one claim of the patent-in-suit. *Charles Greiner & Co. Inc. v. Mari-Med Mfg. Inc.*, 962 F.2d

---

224 F.3d 1328, 1331 (Fed. Cir. 2000) ("claims are not correctly construed to cover what was expressly disclaimed"); *Southwall Techs.*, 54 F.3d at 1576 ("the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

[22] *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[b]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, [and] he is by implication surrendering such protection.").

[23] *Hester Industries Inc. v. Stein Inc.*, 142 F.3d 1472, 1481 (Fed. Cir. 1998); *see, e.g., Hockerson-Halberstadt, Inc. v. Avia Group Intl*, 222 F.3d 951, 956 (Fed. Cir. 2001) (holding that patentee's arguments distinguishing prior art effectively disclaimed "a shoe with a groove width greater than the combined width of the two fins").

[24] *See Forest Labs, Inc. v. Abbott Labs.*, 239 F.3d 1305, 1314 (Fed. Cir. 2001).

1031, 1034 (Fed. Cir. 1992) ("After interpreting a claim, . . . [it must be demonstrated] that the accused device is within the scope of the claim. To infringe, an accused device must embody exactly each claim limitation or its equivalent.")

### a. Interpretation of Claim 43 Terms "Tandem Computer System," "Tandem Database" and their Interoperability Remain in Doubt

Claim 43 is the only independent claim alleged by Blackboard. Claim 43 includes the terms "tandem computer system" and "tandem database" and requires "each" respond to a command. Declaration of Dr. Gavin Clarkson, ¶ 11, 12, attached hereto as Exhibit D. As clearly acknowledged by Blackboard's own technical expert Dr. Mark Jones, during prosecution of the '878 Patent, the term "tandem" was included in the claims in order to induce the Examiner to allow the claims. Declaration of Mark Jones, ¶ 21, Page 6. In fact, the Examiner's Notice of Allowability identifies "tandem database" as a reason for Allowance. *Id.*

However, while the term "tandem" appears to be the basis for patentability of the '878 Patent, surprisingly, the term "tandem" only appears twice in the written specification of the '878 patent, and in neither case is a definition provided. Ex. D, ¶13, 14.[25]

Moreover, while the term "tandem" has a very specific meaning in the computer industry, Ex. D ¶ 15, and the '878 Patent appears to describe "lockstep" interoperability commonly associated with the term "tandem", Ex. D, ¶ 16, Blackboard's expert attempts to equate the term "tandem" with another very different term also well known in the industry, namely "redundancy." Declaration of Mark Jones, ¶ 25, Page 8. The two terms

---

[25] For this reason, the '878 Patent is likely inoperable for failure to satisfy the requirements of 35 U.S.C. §112, casting further doubt on Blackboard's success on the merits.

are not interchangeable. In fact, the '878 Patent utilizes the term "redundant" to modify or describe a "tandem system." Ex. D, ¶ 23.

Thus, on the face of the '878 Patent itself, the key claim terms "tandem computer system" and "tandem database" are vague as to their meaning and usage in the patent. The significance and importance of these terms was further heightened by the prosecution history where Allowance was based on the inclusion of these terms in Claim 43. Very clearly, prosecution history estoppel was triggered by the claim amendments relating to the term "tandem."

Finally, Blackboard's own expert casts further doubt on the meaning of these terms by attempting to incorrectly equate the term "tandem" with "redundant", a position that is even inconsistent with the usage of "redundancy" in the '878 Patent itself.

Any determination of infringement or success on the merits in the instant case must be proceeded by a full interpretation of the foregoing terms and their interoperability. There cannot be any presumption of likelihood of success on the merits when the scope of the claim(s) at issue is undetermined. For this reason, Blackboard's Motion for Preliminary Injunction must be denied.

### b. The Accused TechRadium Product Lacks Each and Every Element of the Only Alleged Independent Claim

Claim 43 is the only alleged independent claim. Moreover, in its Motion for Preliminary Injunction, Blackboard only alleges literal infringement of the '878 Patent by the TechRadium Product. Thus, in order to succeed on the merits of the case, Blackboard must prove a one-to-one correspondence between the claim elements and the accused TechRadium device. This it cannot do.

Simply put, the TechRadium Product lacks at least the following "a tandem computer system" and a "tandem database". Ex. D, ¶ 32. Further, without these claimed "tandem" devices, the TechRadium Product also lacks the claimed interoperability between these "tandem" devices as required in Claim 43. Ex. D, ¶ 32. Notably, Blackboard's expert glosses over these missing claim elements in his Declaration. However, without these claim elements in the TechRadium Product, no literal infringement can exist.

As set forth above, Blackboard's expert attempts to equate common redundancy in the TechRadium Product with "tandem" systems as required in Claim 43. However, such is contrary to the common meaning of these words in the computer industry. Moreover, while there is not a one-to-one correspondence between the Claim 43 "tandem computer system" and "tandem database", the TechRadium Product simply lacks such physical components all together and as such, has no physical device that could be equated with these "tandem" systems.

Furthermore, in rendering the various "legal" conclusions of his Declaration, Dr. Jones makes numerous statements about the TechRadium Product that are either wrong or inaccurate. See Declaration of David Hickey, ¶ 5-10, attached hereto as Exhibit E. Clearly, Dr. Jones does not fully understand the TechRadium Product. Finally, the plausibility of Dr. Jones' Declaration, upon which Blackboard primarily relies in its Motion, is cast in further doubt by the fact that Dr. Jones' provides opinions on such legal matters as "direct infringement" the "two-step analysis" for direct infringement, "claim construction" and TechRadium's "making, using offering for sale and selling" of the TechRadium Product. Declaration of Mark Jones, ¶ 14, 17.

Since the TechRadium Product completely lacks "a tandem computer system" and a "tandem database" and cannot operate in the manner required of Claim 43, the TechRadium Product does not infringe Claim 43. As such, Blackboard's success on the merits will fail. For this reason, Blackboard's Motion for Preliminary Injunction must be denied.

### (2) **Irreparable Harm will not result should an Injunction not Issue**

Blackboard cannot argue in good faith that it will suffer irreparable harm. First, Blackboard bought the patent from Zimmers less a month before it brought the lawsuit. The prior owners of the '878 Patent, i.e., NTI, permitted TechRadium to operate for several years without even bringing the patent to TechRadium's attention even thought the parties were well aware of each other by virtue of their past dealings. Ex. A, ¶ 5-10.

Blackboard (or its predecessors) and TechRadium have co-existed as competitors since at least 2005. Neither party has a monopoly on the market and neither party has been able to block the success of the other party because of its mere presence. Blackboard has not offered any proof that it has had to alter its method of doing business or that it has suffered in any demonstrable way by the presence of TechRadium. Even if Blackboard were to ultimately win on the merits, it has not demonstrated a single instance where a sale was diverted from it to TechRadium because of TechRadium's infringement of a patent which at the time was owned by a third party.

In a patent case, if Blackboard is ultimately successful at trial, an award of money will provide an adequate remedy. *See Eli Lilly and Company v. American Cyanamid Co.*, 82 F.3d 1568, 1571 (Fed. Cir. 1996); *see also Mercexchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 583 (E.D. Vir. 2007) (following remand from Supreme Court, court found Plaintiff had adequate remedy at law). Even if a permanent injunction is ultimately

supported by the evidence, as argued by Blackboard in its memorandum, this does not support the granting of a preliminary injunction, particularly when the scope of the patent has not been determined and is in question, and when there has not been any evidence of irreparable harm. Blackboard's lengthy citations supporting a possible permanent injunction do nothing to reduce the requirements of meeting the four part test required for the extraordinary preliminary relief sought. *See eBay,* 547 U.S. at 391. As quoted in Blackboard's Memorandum, at page 23, paraphrasing Chief Justice Roberts in *eBay*: "trial courts must apply the traditional four-factor test in deciding whether to issue an injunction..." *See id.*

In every single instance cited by Blackboard where TechRadium and Blackboard went head-to-head, Blackboard had no interest in the '878 Patent. Blackboard did not have any right to block any activity of TechRadium in making these sales and could not have been irreparably harmed by such activity.

Further the primary cases relied upon by Blackboard for supporting a preliminary injunction are all pre-*eBay*, which changed the landscape on this issue. Blackboard is conveniently mixing the law regarding permanent injunctions after a court finding of infringement with preliminary injunctions, which are extraordinary relief to be granted more rarely and in the face of much stronger evidence.

In the present case, Blackboard did not invent any of the technology disclosed or covered by the '878 Patent. It does not have any time invested in the development, sale or support of the products covered by the '878 Patent. It merely purchased the patent a few weeks ago in order to claim irreparable harm, which it has not suffered. In fact, Blackboard has not even presented any concrete evidence showing that it markets a

product under the '878 Patent. Certainly, Blackboard cannot now state that it has suffered irreparable harm simply because TechRadium competes with it.

No irreparable harm has been shown, based on the history of parties, the lack of any evidence of lost sales at any time since Blackboard has acquired rights in the '878 Patent, and the lack of any concrete evidence that a product covered by the '878 Patent is even available to be purchased from Blackboard. *See Mercexchange,* 500 F. Supp. 2d at 569-70 (requiring movant to show irreparable harm).

### (3) The Balance of Harm Does Not Favor an Injunction

In view of the fact that Blackboard cannot show a likelihood of success on the merits at this time and has not provided any real evidence of irreparable harm, there is not any basis for a preliminary injunction. In view of the scant evidence provided by Blackboard, and in view of its skewing unrelated evidence of sales during a time when it did not have any protection or of assuming that a clouded claim is proof of a likelihood of success, it would be improper to issue a preliminary injunction.

The balance of harm greatly favors not granting an injunction at this time. *See Natural Resources Defense Coun. v. Watkins,* 954 F.2d 974, 981-83 (4th Cir. 1992) (balance of harms did not favor injunctive relief; plaintiff bears the burden of proof); *Guerra v. Scruggs,* 942 F.2d 270, 273-81 (4th Cir. 1991) (applying the balance of hardship test, plaintiff failed to establish injunction was warranted). The TechRadium product at issue in this case is the only product TechRadium sells. An injunction prohibiting TechRadium from selling this product would shut the company down and force it to layoff its employees. Such an injunction would irrevocably cripple the company. Ex. E, ¶ 11-14. Maintaining the status quo permits both parties to continue as they have for the last five years without any additional harm to either party. Maintaining

the status quo will permit the court to review complete evidence to determine: (1) whether the clouded claim can or cannot be applied against the TechRadium product; (2) whether or not the competing product of Blackboard is even covered by the '878 Patent, which should be a requirement to support an injunction; and (3) whether Blackboard has lost or is likely to lose a single sale to TechRadium due to TechRadium's alleged infringement since Blackboard has acquired an interest in the '878 Patent. It would be improper to grant an injunction prior to the development of these issues through a full hearing on the merits.

### (4) A Preliminary Injunction is not in the Public Interest

While the court has sufficient grounds to deny the motion for the reasons stated above, the public interest cannot be ignored in the present case. *See Safety-Kleen, Inc. v. Wyche,* 274 F.3d 846, 863-64 (4th Cir. 2001) (district court properly concluded the public interest did not favor injunctive relief). As previously stated, and as confirmed by Blackboard in its memorandum, a great number of the customers and users of the products sold by TechRadium are school districts. Ex. A, ¶ 4. These districts employ the TechRadium products to assure the safety and welfare of students and personnel in the face of conditions requiring emergency notification of parents, administrators, and first responders. It the case of TechRadium even the United States Military has employed the system as an emergency alert system for communicating the welfare and condition of military personnel. *Id.* A preliminary injunction would put thousands of students and thousands of military personnel at additional risk. A preliminary injunction would not protect but, to the contrary, would endanger the public interest in the present case. *See National Audubon Society v. Dept. of Navy,* 422 F.3d 174, 203-06 (4th Cir. 2005) (weighing public interest and balance of harms, court concluded injunction granted was

too broad and failed to properly take into account substantial harm to important military interests).

### IV. Conclusion

Blackboard has not met the four-element test required in order to obtain a preliminary injunction and the motion should be denied. The Court must have a full opportunity to interpret the claims of the '878 Patent. Moreover, the TechRadium Product does not include each and every element of Claim 43. Nor is any irreparable harm by Blackboard likely since Blackboard only recently acquired the '878 Patent and the predecessor-in-interest to the '878 Patent knowingly co-existed with TechRadium for years without asserting the '878 Patent against the TechRadium Product. In contrast, such an injunction would irreparably harm TechRadium by forcing TechRadium out of business. Finally, countless school children and army personnel who rely on the TechRadium Product would be placed at risk following such a closure. For the foregoing reasons, TechRadium requests that this court deny Blackboard's motion for preliminary injunctive relief, deny any requests for expedited discovery and award TechRadium its reasonable costs and attorneys fees for defending this motion. Further, in the event that the court enters a preliminary injunction, a substantial bond by Blackboard should be required as such injunction would in effect destroy the Defendant.

Respectfully submitted,

/s/Mary C. Zinsner
Mary C. Zinsner, VSB No. 31397
mary.zinsner@troutmansanders.com
S. Mohsin Reza, VSB No. 75347
mohsin.reza@troutmansanders.com
Attorneys for TechRadium, Inc.
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340

Richard E. Griffin, Esquire
rgriffin@jw.com
Mark Tidwell, Esquire
mtidwell@jw.com
Of Counsel
Jackson Walker, L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Blair Martin Jacobs, Esquire
bjacobs@mwe.com
Karla Lynn Palmer, Esquire
kpalmer@mwe.com
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005
Telephone: (202) 756-8000
Facsimile: (202) 756-8199

Fay E. Morriseau, Esquire
fmorriseau@mwe.com
McDermott Will & Emery LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612
Telephone: (949) 757-7115
Facsimile: (949) 851-9348

/s/Mary C. Zinsner
Mary C. Zinsner, VSB No. 31397
mary.zinsner@troutmansanders.com
S. Mohsin Reza, VSB No. 75347
mohsin.reza@troutmansanders.com
Attorneys for TechRadium, Inc.
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340

Richard E. Griffin, Esquire
rgriffin@jw.com
Mark Tidwell, Esquire
mtidwell@jw.com
Of Counsel
Jackson Walker, L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221